# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

JOSEPH E. BARTON,

| | | |
|---|---|---|
| Petitioner, | : | Case No. 2:20-cv-6278 |
| | | Consolidated with 2:21-cv-111 |
| - vs - | | District Judge Edmund A. Sargus, Jr. |
| | | Magistrate Judge Michael R. Merz |

GEORGE FREDERICK, Warden,
  Correctional Reception Center,

:

Respondent.

# SUBSTITUTED REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Joseph Barton to obtain release from his custody maintained by Respondent George Frederick.  The relevant pleadings are the Amended Petition (ECF No. 5), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9), and the Petitioner's Response to the Return of Writ (ECF No. 18).

The Magistrate Judge filed a prior Report and Recommendations on October 12, 2021, because it then appeared Barton was not going to file a reply (ECF No. 17).  In light of Barton's Response, the prior Report has been withdrawn (ECF No. 19) and this Report is substituted.

**Litigation History**

In February, 2015, the Belmont County grand jury indicted Petitioner on one count of

1

aggravated murder in violation of Ohio Revised Code § 2903.01(B) (Indictment, State Court Record, ECF No. 8, Ex. 1). Barton was convicted by a trial jury and sentenced to life imprisonment without the possibility of parole (Judgment Entry, ECF No. 8, Exs. 7, 8). Represented by new counsel, Barton appealed to the Ohio Court of Appeals for the Seventh District which affirmed the conviction. *State v. Barton,* 2019-Ohio-580 (Ohio App. 7th Dist. Feb. 6, 2019) (Copy at State Court Record, ECF No. 8, Ex. 13). Barton was granted a delayed appeal to the Supreme Court of Ohio, but that court then declined to exercise appellate jurisdiction. *Id.* at Ex. 18.

In the Petition filed under the above case number, Barton pleads the following grounds for relief:

> **Ground One**: Barton's due process rights as guaranteed by the 5th, 6th, & 14th Amendment was violated by the introduction of unreliable expert testimony.
>
> **Supporting Facts**: Unreliable expert testimony regarding hair comparison was introduced, and Barton was unable to challenge this evidence because it was junk science which was unreliable. As a result, Barton could not properly confront this evidence.
>
> **Ground Two**: Barton's conviction is based on insufficient evidence.
>
> **Supporting Facts:** Barton's conviction is based on insufficient evidence because he was convicted when the State did not prove beyond a reasonable doubt all the elements of the crime.

(Amended Petition, ECF No. 5, PageID 24, 26).

In Case No. 2:21-cv-111, Petitioner pleads the following grounds for relief:

> **Ground One**: Plaster cast of footprints not fuly [sic] investigated of and or around victoms [sic] car. Found by family.
>
> **Supporting Facts**: The footprint impressions did not match mine. Not around the victoms [sic] property, or his car. The brother of the victom [sic], Jessie Townsnd and his partner Jennifer Harris "found" the car houers [sic] after police was looking for it. When it was in plain sight from all acounts [sic]. On the side of the road not evin

[sic] a mile from the victoms [sic] house. (P.923 trial transcripts-after. Calling Cah Barton's, "10:44 am. By phone records." They leav [sic] flushing, a 45 minutt [sic] drive. To find the car around 11:30. * It merrits [sic] question, the evidence of fact ways [sic] more tords [sic] Jessie Townsid and Jennifer Harris. * There is also the 40 min Daha call arguing with Jule the evnind [sic] before. — the 10 min. 911 call was at, 8:57 am. — "Two 8½ hours the car is "missing" —

**Ground Two**: The trial court erred in allowing a conviction either in the face of insufficient evidence or against the manifest weight of the evidence.

**Supporting Facts**: By the stats [sic] own admition [sic] they only have a theory. The hair from Mr. Wevars barbor shop. Was pulled from a trash can after fore [sic] days. And not all the hair and contents was took. The Belmont Sheriffs Ofice sent it to the Bureau of Criminal Identification. It was not sutabl [sic] for testing. The hair was not obtained proprly [sic]. Or in a sutabl [sic] time period. It was sent back.

After sed [sic] hair set [sic] in a large gray tote with gass [sic]  cans for the better part of two years. Sealed shut with lid. The hair was took out, removed from plastic store bag. A small amount was then put in a seald [sic] forensic bag and sent to be tested for petroleum pruducts [sic].

**Ground Three**: The court erred allowing pseudo science into evidence, such to violate various Sixth Amendment rights.
**Supporting Facts:** There is no compelling direct or circumstantial evidence aginst [sic] me. The only DNA that was mine, was on my jiens [sic]. The major profill [sic] of DNA. On the shifter was Jolien Townsnds. The victon [sic] - this shows he is the last one to tuch [sic] the shifter. Where the minor profile dose not prove my DNA. Only I couldnt be ruled as a "posable" [sic] contributor. And it stats [sic], this was not sutable [sic] for codis entry.

**Ground Four**: A witness was silinced [sic] by the prosecutor. And ruled as "moot" – by the judg [sic].

**Supporting Facts:** This witnes [sic] "Steve Cury" – I think! Was being released. Had no adress [sic] - he had information consurning [sic]  the victom [sic]  & the victoms [sic] brother Jessie Townsnd. Fisicly [sic] fighting all the time He talked to my attourny[sic]. Then was asked by the active detective Ryin Allar why he was sticking

3

his nose in somthing [sic] that dd not consirn [sic] him. And to stay out of it.

The witness – Steve Cury started to do a video testamony [sic]. That he saw the brothers fighting a lot. The prosacution [sic] objected, saying he wasnt [sic] going to say anything that wasnt known [sic] – "I think" – The judge sustaned [sic] it.

(Petition ECF No. 1, Case No. 2:21-cv-111, PageID 5, 7, 8, 10.)

The Grounds for Relief will be referred to in this Report as follows: Ground One 2678, Ground Two 2678, Ground One 111, etc.

# Analysis

## Ground One 2678:  Conviction Based on Unreliable "Junk" Science

In his First Ground for Relief in Case No. 2678, Barton claims he was convicted on the basis of unreliable scientific evidence regarding hair comparison in violation of his due process rights.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   Before coming to federal court with a constitutional claim, a habeas petitioner must first exhaust remedies made available to him in the state court system.  If he failed to use those procedures and they are no longer available to him, he is said to have procedurally defaulted on the claim. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).   Furthermore, procedural default will also bar merit consideration of a claim if it was not fairly presented to the state courts as a federal constitutional

claim.

Barton raised his unreliable hair comparison claim as his First Assignment of Error on direct appeal, but he made no constitutional claim. Instead, he alternatively asserted that a layperson could make hair comparisons and that the State's witness on this topic was not a qualified expert under Ohio R. Evid. 702. The Seventh District rejected both branches of this Assignment of Error, finding hair comparison a proper subject of expert testimony and the State's witness was qualified by training and experience to make the comparison. *State v. Barton, supra,* ¶¶ 9-22.

Habeas relief may be available where a violation of state law "amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008), *cert denied*, 129 S. Ct. 1991 (2009). "State law errors may warrant habeas relief if the errors 'rise for some other reason to the level of a denial of rights protected by the United States Constitution.'" *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (2010), *quoting Barclay v. Florida*, 463 U.S. 939, 957-58 (1983).

Barton acknowledges these principles but asserts his is just such a case: "Federal habeas corpus relief is only warranted where a violation of a state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process." (Response, ECF No. 18, PageID 800, citing *Cooper v. Sowders*, 837 F.2d 284 at 286 (6th Cir. 1988). But the underlying question of whether the prosecution violated Ohio evidentiary rules is a question of Ohio law on which we are bound by the state court's determination. *Bradshaw v. Richey*, 546 U.S. 74 (2005). And the Seventh District held the witness was qualified under Ohio R. Evid. 702.

In his Response, Barton makes several arguments about admission of the hair collected from Weaver's barbershop: "The key evidence that was obtained that led to the indictment of

petitioner were the test results from a hair sample that was obtained from a barbershop that is alleged to be petitioner's, and is also alleged to contain gasoline" (Response, ECF No. 18, PageID 800."

The first argument seems to attack the chain of custody of the hair sample:

> The hair sample was obtained from a waste basket at a barbershop, and then stored in the same tote as gas cans that were obtained from the scene before it was eventually tested. As a matter of fact, the doors in the courtroom had to be opened to air out the courtroom because of the odor that was emanating when the tote was opened during trial.

*Id.* at 800. The first statement about where the hair sample was obtained is attested by the Seventh District's decision, *State v. Barton, supra,* at ¶ 11. But Barton offers no record references to any place where any of the other factual statements in this paragraph are attested. Barton has been furnished with a complete copy of the State Court Record as filed in this case and the Order for Answer requires record references be given with the PageID number (ECF No. 6, PageID 37). Barton has not complied with that Order so this Court does not know, for example, if there is any admissible or admitted evidence about the odor of gasoline in the courtroom. If Barton was present and was able to testify to the odor, did he? Did anyone else? Barton's unsworn statement in his Response about the odor is clearly not admissible. Nor can Barton cure that deficiency by providing an affidavit now about the odor because this Court is limited to considering evidence that was of record in the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Barton's second argument is about the strength of the inference connecting his conduct the day of and the day after the fire with the hair sample. He notes the Seventh District's findings that he "went to his nephew's house where he showered, washed his clothes, and then went to buy new clothes. Appellant also got a haircut on October 16." (Response, ECF No. 18, PageID 800, quoting *State v. Barton, supra.* Not disputing those factual findings, he continues

6

> So if it is indeed true that petitioner went to his nephew's house and showered, washed his clothes, went to buy new clothes and then went to get a haircut a day later on October 16th, why would his hair samples still contain gasoline? Also, most hair products are petroleum based products just like gasoline.

*Id.* at PageID 801. The first of these arguments either was or should have been made to the jury. Habeas corpus courts do not re-weigh the evidence. The second argument is not based on any record evidence. Is it true that most hair products are petroleum-based? Where's the proof in the record? And common sense suggests strongly that even if they are, they do not smell like gasoline.

Barton's third argument is that the hair comparison testimony was not conclusive. The State's hair comparison expert could only testify that the hair recovered from Weaver's barbershop was consistent with a known sample taken from Barton. But no one link in a chain of circumstantial evidence needs to be conclusive in itself to be admissible. Friedman testified that if the samples had not been consistent, that would have been the end of the hair examination. But because they were consistent, the State proceeded to mitochondrial DNA testing which provided a much stronger circumstantial link. On the admissibility of mitochondrial DNA and its probative value, see *United States v. Beverly,* 369 F.3d 516 (6th Cir. 2004)(Boggs, J.).

Barton concludes his argument on Ground One by claiming "he has demonstrate[d] that the state court's judgment was contrary to clearly established Federal Law as determined by the Supreme Court of the United States." (Response, ECF No. 18, PageID 802.) The Magistrate Judge concludes he has not. The U.S. Supreme Court has adopted standards for the admission of expert testimony in **federal** trials. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). But it has never held those standards are binding on the state courts under the Constitution.

Therefore, Petitioner's First Ground for Relief fails to state a claim upon which habeas corpus relief can be granted. Furthermore, any such possible constitutional claim is barred by

Barton's procedural default in failing to present this claim to the state courts as a constitutional claim.  Ground One 2678 should therefore be dismissed with prejudice.

**Ground Two 6278:  Conviction on Insufficient Evidence or Against the Manifest Weight ot the Evidence.**
**Ground Two 111:  Insufficient Evidence to Support Conviction**

In his Second Ground for Relief in Case No. 2:20-cv-6278, Barton claims his conviction is supported by insufficient evidence or is against the manifest weight of the evidence.  The second of these claims – conviction against manifest weight – does not state a claim for federal habeas corpus relief.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  In his Second Ground for Relief in Case No. 2:21-cv-111 he also claims his conviction is not supported by sufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim for relief under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the

criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364. A sufficiency challenge should be assessed against the elements of the crime. In cases such as Petitioner's, challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012) (per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Barton submitted his insufficient evidence claim to the Seventh District as part of his Second Assignment of Error and the appellate court decided it as follows:

> {¶25} First, we will consider whether appellant's conviction is supported by sufficient evidence.
>
> {¶26} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith,* 80 Ohio St.3d at 113.

{¶27} The jury convicted appellant of aggravated murder in violation of R.C. 2903.01 (B), which provides in relevant part: "No person shall purposely cause the death of another • • • while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, • • • aggravated arson, arson …."

{¶28} We must examine the state's case to determine whether it presented evidence going to each element of aggravated murder.

{¶29} Misty Whitlach, Townsend's daughter was the first witness. Whitlach testified that her father was a frail man, weighing only 108 pounds. (Tr. 306). She stated that Townsend had wood on his property that he wanted to cut, but he was physically unable to do the work. (Tr. 306). She also stated that he had a log splitter on his property. (Tr. 306).

{¶30} Steve Williams lived in the next trailer down the road from Townsend's trailer. He testified that on the morning of October 15, 2012, he was walking his dog down Wegee Road. (Tr. 319). When he first went past Townsend's property, he noticed wood cut up on the property. (Tr. 309). When Williams passed Townsend's property on his way back home, he noticed a younger man standing by Townsend's car. (Tr. 321). The car was idling. (Tr. 321). As he continued to walk back toward his own trailer, Williams heard a "big explosion." (Tr. 322-323). He turned back to see smoke pouring out of Townsend's trailer. (Tr. 322-323). Williams then ran back to the bridge that went across the creek to Townsend's property. (Tr. 323). He saw Townsend's car starting across the bridge toward him. (Tr. 323-324). When the car got near Williams, the driver covered his face and continued to drive east at a high rate of speed. (Tr. 324). After realizing he could not do anything else to help, Williams ran home and called 911. (Tr. 328).

{¶31} The 911 director testified that Williams' call to 911 reporting the fire was placed at 8:57 a.m. (Tr. 347).

{¶32} Volunteer firefighter and state highway patrol officer, Jason Greenwood, responded to the scene. Greenwood testified that the fire was concentrated in the living room of the trailer. (Tr. 382). He noticed a gas can on the porch. (Tr. 382). Once the fire was extinguished, as Greenwood was searching through the debris, he found a human head. (Tr. 388).

{¶**33**} A state fire marshal investigator arrived with a K-9 trained to detect accelerants. He testified that the K-9 indicated three areas in the living room and one area outside where it detected accelerants. (Tr. 411 ).

{¶**34**} Michael Stellfox is an investigator with the Ohio State Fire Marshal. Stellfox testified as to the state of the trailer and described samples that he collected.

{¶**35**} The deputy coroner testified that Townsend had been stabbed, shot, and dismembered before his body was burned. (Tr. 864, 868, 869, 871-872). The coroner opined that Townsend's body parts had been separated by a power saw given the appearance of the cuts. (Tr. 878).

{¶**36**} Georgeanne Bishop cuts hair at Weaver's Barbershop. Bishop testified that on October 16, 2012 (the day after the fire), a man came into the barbershop and wanted a short haircut. (Tr. 426-427). She noticed that the man's shoulder-length hair had been pulled out in spots. (Tr. 426). The man indicated to her that he had been in a fight. (Tr. 426). She noticed some cuts on the man and stated that he looked like he had been in a fight. (Tr. 427). Bishop cut the man's hair into a short crew cut. (Tr. 427).

{¶**37**} Robert Weaver owns Weaver's Barbershop. He testified that sheriff's deputies came to the barbershop and inquired if he remembered a customer from earlier in the week who had long hair cut short and if he still had the hair. (Tr. 594). He stated that he did. (Tr. 594). Weaver remembered the customer because it was "an unusual situation, getting long hair cut that short." (Tr. 595). Weaver testified that the hair was in the waste basket and because it was cut in long lengths, instead of short lengths like most hair, it was easy for him to retrieve it. (Tr. 594). Weaver stated that he put the hair in a bag for the deputies. (Tr. 594 ).

{¶**38**} Joshua Friedman is a trace evidence examiner for the FBI. He examined eight hairs given to him that were recovered from Weaver's Barbershop. (Tr. 470, 474). He compared those hairs to known sample hairs from appellant. (Tr. 472). He was able to determine that the eight hairs came from a Caucasian. (Tr. 474). Friedman was also able to determine that appellant could be included as a possible source of those eight hairs from the barbershop. (Tr. 474, 493). Freidman did note, however, that he could not say that the hairs came from appellant to the exclusion of all other people, only that appellant could be included a possible source of the hairs. (Tr. 474-475).

12

{¶39} Constance Fisher is a biologist forensic examiner for the FBI. She supervises the mitochondrial DNA testing. Fisher explained that mitochondrial DNA is different from nuclear DNA in that it is inherited only from a person's mother. (Tr. 500). Consequently, mitochondrial DNA is not unique to a single individual to the exclusion of all others. (Tr. 500-501). Fisher tested two hairs from the barbershop sample and compared them to the known DNA standard from appellant. (Tr. 509-511). She determined that the mitochondrial DNA sequence from the hair had a common base at every position with the known sample from appellant. (Tr. 514). Fisher was then able to determine that no more than 31 out of 1,000 Caucasians have that same mitochondrial DNA sequence. (Tr. 515).

{¶40} Christa Rajendram is a forensic pathologist at the state fire marshal's lab. She tested the hairs recovered from the barbershop for ignitable liquids. She testified that her testing revealed there was gasoline on the hair. (Tr. 1260). Rajendram also tested some items recovered from the scene of the fire. She testified that both clothing from the victim and debris from the victim's sofa both tested positive for gasoline. (Tr. 1262-1267).

{¶41} Townsend's brother, Jesse, testified that he talked to Townsend the night prior to the fire. (Tr. 436). Jesse stated that he called Townsend in the evening and appellant answered the phone. (Tr. 436). Jesse spoke to both appellant and Townsend. (Tr. 436-437). They indicated that appellant had been splitting wood for Townsend and that they were both drinking. (Tr. 437-439). The next morning, after learning of the fire, Townsend's daughter called Jesse to see if Townsend was with him. (Tr. 439). Upon learning of the fire, Jesse and his girlfriend drove over towards Townsend's trailer. (Tr. 441 ). On their way, they found Townsend's car sitting down the road from appellant's trailer. (Tr. 441).

{¶42} Darla Rader was Townsend's friend. Rader called Townsend the evening before the fire around 7:30 p.m. (Tr. 558-559). When she called Townsend's trailer, a man who identified himself as appellant answered the phone. (Tr. 559). Rader testified that appellant was rude to her and did not want her to talk to Townsend. (Tr. 560-561). She asked appellant if Townsend was ok and he replied "I don't know" and told her that he would have to carry Townsend to the phone. (Tr. 562). Appellant repeatedly told Rader she could not talk to Townsend and not to call back again. (Tr. 562-563). After she persisted for some time, appellant eventually let her briefly speak to Townsend. (Tr. 565). She stated that Townsend

13

asked her "what's happening?" and told her he would call her later. (Tr. 565-566).

{¶43} Hasson Lowry worked for the Ohio Bureau of Criminal Identification and Investigation (BCI) in computer forensics. He was called to appellant's trailer to look into a DVR that was hooked up to a camera monitoring the outside of appellant's trailer. (Tr. 614, 616). Lowry explained that the DVR feed on October 15, 2012 (the day of the fire), showed appellant sticking his head out of the trailer. (Tr. 645-646). It then showed detectives pulling up approximately five minutes later on a side street at 3:10 p.m. (Tr. 642). The officers left after a minute. (Tr. 646-647). Approximately six minutes later, at 3:18 p.m., the DVR feed showed a car backing into appellant's drive. (Tr. 628,647). It then showed appellant exit his trailer holding a white sheet full of something. (Tr. 628). It showed appellant run to the back of the vehicle, open the hatch, throw in the white sheet bundle, and close the hatch. (Tr. 628). It then showed appellant jump into the front seat and the vehicle drove away. (Tr. 628).

{¶44} Carl Barton is appellant's brother. Barton testified that two days after the fire, appellant told him he had 'been at Townsend's cutting firewood and he was supposed to have gone back the next day (the day of the fire) to finish. (Tr. 728-730). Barton also testified that appellant never contacted law enforcement or went back to his trailer after he left with his cousin on October 15, 2012, despite the fact that law enforcement was searching his property and looking for him. (Tr. 739-742).

{¶45} The Shadyside Police Chief testified that Townsend's vehicle was found on Wegee Road. (Tr. 372). It was located just past appellant's trailer. (Tr. 373).

{¶46} BCI investigator Joshua Durst searched the fire scene and also located Townsend's car. He testified that the car was located on a "pull-off' area of Wegee Road. (Tr. 775-776). Inside the car, Durst located a pair of vice grips on the driver's side floorboard that appeared to have blood on them. (Tr. 810). He also testified that a shotgun and shotgun shell fragments were found near Townsend's remains. (Tr. 782-783, 794-795). And he stated that four gas cans were located next to the trailer. (Tr. 784-785). Additionally, Durst located a circular saw, a jigsaw, and some knives within the trailer. (Tr. 798-799).

{¶47} BCI forensic scientist Devonie Herdeman tested the blood on the vice grips found in Townsend's car for DNA evidence. Her testing revealed that the DNA from the blood on the vice grips was

consistent with Townsend's DNA with a statistical result of one in two quintillion, 490 quadrillion. (Tr. 970-971). She also tested another DNA profile she found on the gearshift of Townsend's car. (Tr. 972). This DNA profile was a mixture with the major profile being consistent with Townsend and the minor profile being consistent with appellant. (Tr. 972). The statistical probability for that DNA on the gearshift was one in 251,700. (Tr. 980).

{¶48} April Stevey was appellant's "on-and-off" girlfriend. Stevey testified that on October 14, 2012 (the day before the fire), appellant called her from Townsend's phone. (Tr. 820). She also stated that she called Townsend's number in order to speak with appellant. (Tr. 821 ). Stevey additionally testified that she spoke with appellant at 10:01 a.m. and at 12:05 p.m. on the day of the fire. (Tr. 822). The calls in which Stevey spoke to appellant were placed from Stevey's phone to appellant's phone. (Tr. 1153, 1156). A call was also placed that day from Stevey's phone to Townsend's number at 10:26 a.m., which was after the fire was set. (Tr. 1148).

{¶49} Detective-Sergeant Douglas Cruse took photographs of appellant after he was arrested on October 18, 2012. The photographs showed various scratches, scrapes, and injuries to appellant's arm, leg, and chest in addition to a black eye and marks on his nose. (Tr. 1062-1069; Exs. 130-136).

{¶50} Brian Parker is appellant's nephew. Parker testified that on the morning of October 15, 2012 (the day of the fire), appellant called him and asked him to pick him up so that he could get a shower and do his laundry. (Tr. 1085). Parker stated that because appellant did not have running water at his trailer, appellant sometimes called Parker and asked to come to his house to do laundry and shower. (Tr. 1085). As Parker drove down Wegee Road to appellant's trailer, he noticed the fire trucks tending to a fire. (Tr. 1084). Parker stated when he arrived at appellant's trailer, appellant came out and put his clothes in the back of the vehicle. (Tr. 1090). Appellant then got into Parker's vehicle and Parker drove on Wegee Road back toward the fire scene. (Tr. 1090-1091). As they passed the fire scene, Parker noticed that appellant ducked down in the car. (Tr. 1092). Appellant told Parker he had been there cutting wood the previous night. (Tr. 1093).

{¶51} When they arrived at Parker's house, appellant showered and washed his clothing. (Tr. 1098). Parker stated that appellant stayed with him until he was arrested on October 18, 2012. (Tr. 1101). During those few days, Parker took appellant to a second-hand store

to buy different clothing. (Tr. 1104). He also testified that he may have taken him to Weaver's Barbershop. (Tr. 1105, 1109).

{¶52} Caleb Watson is a manager for AT&T. Watson testified regarding phone records for calls to and from Townsend's landline at his trailer on the day before and the day of the fire. Watson testified that a call was made from Radar (Townsend's friend) to Townsend's line at 6:43 p.m. (Tr. 1144). Watson testified that multiple brief calls were placed from Townsend's phone line to April Stevey (appellant's girlfriend) the evening before the fire beginning at 5:54 p.m. and continuing until 6:35 p.m. (Tr. 1139-1143). And on the morning of the fire, a phone call was placed from Stevey's phone to Townsend's line at 10:26 a.m., after the fire had been set. (Tr. 1148). Additionally, on the morning of the fire, appellant placed a call from his phone to his cousin Parker's phone at 9:57 a.m. (Tr. 1152-1153).

{¶53} As to sufficiency, appellant argues that the state's best evidence is that he was "there" on the day of the murder. He asserts mere presence is insufficient to establish criminal culpability.

{¶54} There is no question that Townsend was shot, stabbed, and dismembered and his trailer was set on fire. Thus, these elements of aggravated murder requiring the death to be purposely caused and caused while committing aggravated arson are clearly met. The question is whether the state proved that appellant was the perpetrator of this crime.

{¶55} The state's case is based entirely on circumstantial evidence. "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *'" *State v. Nicely,* 39 Ohio St.3d 147,150,529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5 Ed.1979) 221.

{¶56} Circumstantial evidence and direct evidence have the same probative value. *State v. Dodds,* 7th Dist. No. 05 MA 236, 2007-Ohio-3403, ¶ 88, citing *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). "A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence." *State v. Begley,* 12th Dist. No. CA92-05-076, 1992 WL 379379, *2, citing *State v. Apanovitch,* 33 Ohio St.3d 19, 27,514 N.E.2d 394 (1987).

16

{¶57} Construing the evidence in a light most favorable to the state, as we are required to do, proves the following.

{¶58} Appellant and Townsend were neighbors. Appellant went to Townsend's trailer on October 14, 2012, to help him cut up firewood. The two were splitting wood together and drinking. Appellant brought his chainsaws and a gas can. While appellant was at Townsend's property, he called his girlfriend several times from Townsend's phone. Additionally, appellant answered the phone when Townsend's girlfriend called at 6:43 p.m. Appellant spoke to Townsend's girlfriend for some time before allowing Townsend to speak with her. He indicated to Townsend's girlfriend that he was not sure if Townsend was ok and he would have to carry him to the phone. Townsend's girlfriend did speak to Townsend, who indicated that he would call her back later.

{¶59} Shortly before 9:00 a.m. on October 15, 2012, a neighbor noticed a "younger" man standing on Townsend's property by Townsend's car. The neighbor then heard an explosion and saw that Townsend's trailer was on fire. Next, he saw Townsend's car drive past him at a high rate of speed.

{¶60} At 9:57 a.m., appellant called his cousin asking if the cousin could pick him up so that he could shower and wash his laundry.

{¶61} At 10:26 a.m., appellant's girlfriend attempted to call appellant at Townsend's trailer.

{¶62} At 3:18 p.m., appellant's cousin Parker pulled into appellant's driveway. Appellant ran out of his trailer holding a white sheet full of something that he put in the back of Parker's car. Appellant then got in the car and they drove away. As Parker drove past the fire scene, where police and firefighters remained, appellant ducked down. When they arrived at Parker's house, appellant showered and washed his clothing. He also went and purchased new clothing. Appellant never went back to his trailer despite the fact that law enforcement was searching it and looking for him.

{¶63} Townsend's car was located near appellant's trailer. Vice grips were found inside the car with Townsend's blood on them. DNA found on the gearshift of Townsend's car was consistent with appellant's DNA with the statistical probability of one in 251,700.

{¶64} Appellant had his hair cut the day after the fire. The hair recovered from the barbershop was consistent with appellant's hair

17

with the statistic that of 31 out of 1,000 Caucasians have that same mitochondrial DNA. Gasoline was present on the hair.

{¶65} The items recovered from the fire, including clothing from the victim, tested positive for gasoline. A gas can was found on the porch.

{¶66} While the above evidence is circumstantial, it indicates that appellant was more than just "there" at Townsend's trailer.

{¶67} Every criminal prosecution requires the state to prove that the defendant is the person who committed the crime. *State v. Mascarella*, 7th Dist. No. 15 MA 0102, 2017-Ohio-8013, ¶31, quoting *State v. Tate,* 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, 11 15. As is the case with any other fact, the state can prove the defendant's identity by circumstantial or direct evidence. *Id.*, citing *State v. Jenks,* 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991).

{¶68} In this case, the state presented sufficient circumstantial evidence to prove appellant was the perpetrator. The state presented sufficient facts from which the jury could deduce that appellant was not only present at Townsend's trailer but that he murdered Townsend and set his trailer on fire.

*State v. Barton*, 2019-Ohio-580

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In his Response, Barton notes that the evidence against him is all circumstantial and argues it is too meager to support conviction (ECF No. 18, PageID 804). He particularly emphasizes that

the State presented no motive.  *Id.* On the other hand, he offers no competing inferences as to who else was responsible.

Under the Fifth Amendment, a criminal defendant has no obligation to present any evidence at trial.  On the other hand, when he does not, he takes the risk that the State's unrebutted evidence will be persuasive to a jury.  He correctly points out that there were no eyewitnesses to the crime.  But he offers no refutation of the testimony that Townsend's car was observed to leave the scene of the crime at a high rate of speed shortly after the fire became visible and then was found near his trailer with his DNA on the gear shift.  *Barton, supra*, at ¶ 63.  How did it get there?  He offers no explanation.  He does not deny he called his relative so he could take a shower and buy new clothes shortly after the fire started.  Why?  He offers no explanation.  He does not deny he got his long hair cut short the next day and says no one has testified that he did it to change his appearance.  Why did he do it?  He offers no explanation.  People of course do change hairstyles, but the day after an arson fire and murder at a place where he had clearly been the night before the fire?  And the shorn hair contains gasoline, the accelerant used in the fire?

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.  Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required."  (*Holland v. United States*, 348 U.S. 121(1954) followed; *State v. Kulig*, 37 Ohio St. 2d 157 (1974), overruled on other grounds by *State v. Jenks*, 61 Ohio St. 3d 259 (1991).)

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary

for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed*, 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992).

"[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957).

The State assembled a large body of circumstantial evidence pointing to Barton as the murderer. Barton's response is essentially that the circumstantial evidence is not absolutely conclusive, but evidence at trial seldom is. The Magistrate Judge concludes the Seventh District's decision was a reasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).

Petitioner's Second Ground for Relief in each Petition should be dismissed with prejudice on the merits.


**Ground One 111: Lack of Investigation of Footprint Casts**


In his First Ground for Relief pleaded in Case No. 2:21-cv-111, Barton asserts that the plaster casts taken of footprints found around the victim's car were not fully investigated. He does not argue this Ground for Relief in his Response.

This claim does not state a ground for relief in habeas corpus. The State, in investigating

a criminal offense, is not obliged to investigate every possible piece of evidence.  Here, the State produced a large body of circumstantial evidence pointing to Barton as the murderer.  If he believed the plaster casts proved someone else might be the guilty party, the burden was on him to come forward with that evidence, not to wait until the State had not done so.  Moreover, this claim is procedurally defaulted because it was not presented to the Seventh District Court of Appeals.

**Ground Three 111:  Reliance on Unreliable Evidence**

In his Third Ground for Relief in Case No. 2:21-cv-111, Barton claims he was convicted on the basis of "pseudo-science," this time attacking the DNA evidence as he attacked the hair comparison analysis in Ground One 6278.  He does not argue this Ground for Relief in his Response.  This claim should be dismissed for the same reasons given as to Ground One 6278.

**Ground Four 111:  Improper Exclusion of a Witness**

In his Fourth Ground for Relief in Case No. 2:21-cv-111, Barton claims he was prevented from presenting a witness who would have testified he saw the victim fighting with his brother frequently.  He does not argue this Ground for Relief in his Response.  This claim is procedurally defaulted because it was never presented to the Seventh District Court of Appeals.  It should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends these consolidated cases be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 14, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #